# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 1, 2022

## DAVID SIMPKINS ET AL. V. JOHN MAHER BUILDERS, INC. ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. 20-CV-50050M        James G. Martin, III, Chancellor**

_____

### No. M2021-00487-COA-R3-CV
_____

In this action concerning a newly-constructed home, the plaintiffs asserted, *inter alia*, claims of breach of contract, breach of warranty, fraud, intentional misrepresentation, fraudulent concealment, negligence, and unfair and deceptive business practices by the defendant construction company and its owners. The trial court granted a motion to dismiss filed by the defendants based upon expiration of the three-year statute of limitations applicable to claims of injury to real property. We determine that although the trial court properly applied the three-year statute of limitations to the plaintiffs' claims of injury to their real property, the trial court improperly determined that the doctrine of fraudulent concealment would not apply to toll the accrual of such limitations period concerning the plaintiffs' claims for damages caused by the defendants' failure to seal the utility penetrations beneath the home, a fact which allegedly was concealed by the defendants. We also determine that the plaintiffs stated claims of breach of contract, including breach of any express or implied warranties provided by the contract, and that the trial court improperly dismissed these claims based on the incorrect statute of limitations. We therefore vacate the trial court's dismissal of the breach of contract and contractual warranty claims, as well as the claims based on the defendants' failure to seal the utility penetrations, and we remand those claims to the trial court for further proceedings consistent with this opinion. We affirm the remaining portion of the trial court's judgment in its entirety.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ARNOLD B. GOLDIN, J., joined.

David Simpkins and Sally Simpkins, Spring Hill, Tennessee, Pro Se.

J. Paul Brewer, Nashville, Tennessee, for the appellees, John Maher Builders, Inc.; John Maher; and Tony Maher.

**OPINION**

I.  Factual and Procedural Background

The plaintiffs, David and Sally Simpkins (collectively, "Plaintiffs"), filed a *pro se* complaint on December 30, 2020, in the Williamson County Chancery Court ("trial court") against John Maher Builders, Inc. ("JMB"); John Maher; and Tony Maher (collectively, "Defendants").  Plaintiffs averred that on August 4, 2017, they had purchased real property with a newly constructed home in Spring Hill, Tennessee, built by Defendants.  Plaintiffs asserted that this home was improperly built and contained both construction defects and substandard building materials, which caused the home to be "infested with mold and other microbial growth."  Plaintiffs claimed that as a result of their exposure to mold and other toxins in the home, they had suffered numerous health issues, resulting in medical expenses and a loss of income.

In their complaint, Plaintiffs averred that Defendants should be held liable for, *inter alia*, claims of breach of contract, breach of warranty, fraud, intentional misrepresentation, fraudulent concealment, negligence, and unfair and deceptive business practices.  Plaintiffs sought damages in excess of ten million dollars, in addition to pre- and post-judgment interest, revocation of JMB's contractor's license, and injunctive relief preventing Defendants' involvement in the building industry, among other things. Plaintiffs attached exhibits to their complaint numbering hundreds of pages, which included home inspection and other reports as well as affidavits executed by Plaintiffs. Plaintiffs also filed a uniform civil affidavit of indigency.

On January 27, 2021, Plaintiffs filed an "Emergency Motion for Injunctive Relief and Permanent Monetary Injunctive Relief or Default Judgement and Memorandum," asserting that no disputed material facts existed and requesting that the trial court grant them immediate relief.  Plaintiffs included that in addition to their health problems, they were being threatened with imminent foreclosure on their mortgage loan.  The trial court entered an order regarding the motion on January 29, 2021, stating in pertinent part:

> Plaintiffs' claims are governed by Tennessee law and the procedure for handling this matter is governed by the Tennessee Rules of Civil Procedure.  The Plaintiffs seek immediate relief without affording the Defendants an opportunity to be heard.  The Plaintiffs have tendered a proposed Order suggesting that the Court grant such relief including a judgment against the Defendants for a sum in excess of $3 million together with treble damages in excess of $9 million.  The Court has no authority to grant such relief under Rule 65 of the Tennessee Rules of Civil Procedure

- 2 -

or any other rule contained therein. Accordingly, Plaintiffs' application shall be, and is hereby, denied.

On February 8, 2021, Defendants filed a motion to dismiss, pursuant to Tennessee Rule of Civil Procedure 12.02(6), asserting that Plaintiffs' complaint failed to state a claim upon which relief could be granted. Defendants posited that Plaintiffs' claims were barred by the applicable statute of limitations, codified at Tennessee Code Annotated § 28-3-105, which provided that "[a]ctions for injuries to . . . real property" "shall be commenced within three (3) years from the accruing of the cause of action." Defendants maintained that Plaintiffs' allegations of fraud and misrepresentation were also subject to a three-year statute of limitations, relying on *Med. Educ. Assistance Corp. v. State ex rel. E. Tenn. State Univ. Quillen Coll. of Med.*, 19 S.W.3d 803, 817 (Tenn. Ct. App. 1999). Defendants argued that because Plaintiffs had acknowledged in their complaint that they had become aware of the mold problems in the home in August 2017, their claims filed in December 2020 were untimely.

On March 9, 2021, Plaintiffs filed a response, objecting to Defendants' motion to dismiss and seeking to have the motion to dismiss stricken. Plaintiffs asserted that they had actually filed thirteen separate claims with various dates of discovery and statutes of limitations applicable to each. Plaintiffs again asked the trial court to issue a final judgment in their favor. On March 15, 2021, Plaintiffs restated their response to the motion to dismiss and their request for immediate relief as an "Emergency Motion."

The trial court conducted a hearing concerning the motion to dismiss on March 23, 2021, considering arguments from Plaintiffs and Defendants' counsel. The court subsequently entered an order on April 5, 2021, stating in pertinent part:

> The Court finds that this matter concerns the alleged damage to Plaintiffs' real property and, as such, the statute of limitations that controls is Tenn. Code Ann. § 28-3-105 which provides three (3) years for the filing of an action based upon damage to real property. The Court finds that Plaintiffs' Complaint shows that Plaintiffs were aware of the alleged damages and that the causes of action accrued in August of 2017. The Plaintiffs did not file this matter until December 30, 2020. As such, Plaintiffs failed to file their Complaint within the required three (3) year statute of limitations of Tenn. Code Ann. § 28-3-105. Thus, Defendants' Motion is well taken and it is hereby GRANTED.

The trial court accordingly dismissed Plaintiffs' complaint with prejudice.

Meanwhile, on March 30, 2021, Plaintiffs filed a motion seeking relief from the trial court's judgment pursuant to Tennessee Rule of Civil Procedure 60.02. Plaintiffs claimed that the trial court had failed to consider all of Plaintiffs' alleged causes of

action. On April 6, 2021, the trial court entered an order concerning Plaintiffs' motion wherein the court stated that because the April 5, 2021 order was not final, the court would construe the motion to be a Rule 59 motion. The court acknowledged Plaintiffs' argument that the court had failed to consider matters filed in their amended response to the motion to dismiss. Further acknowledging that it had not yet seen or considered Plaintiffs' amended response at the time of its ruling, the court directed Defendants to file a reply to Plaintiffs' amended response within ten days, at which time the court would either rule based on the pleadings or set the matter for further hearing. Defendants subsequently filed a reply maintaining that the trial court's ruling should stand.

On April 20, 2021, Plaintiffs filed a motion seeking to "Vacate Void Judgment for Fraud on the Court and Deprivation of Plaintiffs' Constitutional Rights." Plaintiffs argued, *inter alia*:

> On March 23, 2021, a Hearing was conducted by the Court which allowed only very brief arguments from the Plaintiffs. Defendants make alleged fraudulent claims and statements that misrepresent the facts and truths thereby presenting fraud on the Court, information which the Court used as the premise for its dismissal. Plaintiffs are restricted from presenting their complete argument to make all case points that had been legally argued in the written motion, and the Court makes a ruling in favor of the Defendants based on misrepresentation of the law and facts by the Counsel for the Defendants. The erred ruling showed distinct bias for the Defendants and violated the Plaintiffs['] Rights. Plaintiffs attempt to address in the Hearing the erroneous claims by the Court and the Court['s] singular view of a "tort" claim under a single statute. This was a complete misrepresentation of the facts of the Plaintiffs['] thirteen (13) separate claims with different statutes of limitations, and different statutes and authorities proving the Plaintiffs['] claims against the Defendants and numerous alleged frauds, code violations, Breach of Contract, Breach of Warranty, Breach Of The Covenant Of Good Faith And Fair Dealing, Fraud - Constructive, Fraudulent Concealment, Fraudulent Inducement, Intentional Misrepresentation, Negligent Misrepresentation, Promissory Fraud, Theft, and Unfair and Deceptive Practices. The Court refused to look at any of the claims and legal citations that the Plaintiffs presented to the Court creating alleged fraud on the Court.

Despite the filing of their motion, on May 5, 2021, Plaintiffs prematurely filed separate notices of appeal as to each of the Defendants, listing the judgment date as April 5, 2021.

The trial court entered an order addressing Plaintiffs' motions on May 7, 2021. In its order, the court again noted that it would construe Plaintiffs' motions as made pursuant to Tennessee Rule of Civil Procedure 59.04. The court stated that pursuant to

- 4 -

applicable case law, a Rule 59.04 motion should be granted when (1) the controlling law changes before the judgment becomes final, (2) when previously unavailable evidence becomes available, or (3) to correct a clear error of law or to prevent injustice. *See Stricklin v. Stricklin*, 490 S.W.3d 8, 11 (Tenn. Ct. App. 2015). The court elucidated that because Plaintiffs had not alleged that either of the first two reasons were applicable, it would address whether there was a clear error of law or whether the court needed to act to prevent an injustice.

As the trial court noted, Plaintiffs made several arguments in support of their motions. First, Plaintiffs advanced that they had stated claims of breach of contract, breach of warranty, and breach of the covenant of good faith and fair dealing. The court determined, however, that the gravamen of all of Plaintiffs' claims related to the construction defects and Defendants' "refusal to act on those defects." The court further noted that Plaintiffs sought recovery of damages as a result of those defects. As such, the court concluded that Plaintiffs' claims stated an action for injury to real property, which was subject to the three-year statute of limitations found in Tennessee Code Annotated § 28-3-105. In making its determination, the trial court relied on this Court's decision in *Kirby Farms Homeowners Ass'n v. Citicorp, Citibank, N.A.*, 773 S.W.2d 249 (Tenn. Ct. App. 1989), finding the case to be factually similar to the instant action.

The trial court also addressed Plaintiffs' argument that they had not discovered their cause of action until January 2018 when Middle Tennessee Mold Remediation submitted its report stating that Defendants had not made the repairs that they claimed they had completed. The court determined, however, that the allegations in Plaintiffs' complaint demonstrated that Plaintiffs knew of defects in the home in August 2017 despite the fact that they might have discovered additional defects at a later time. With respect to Plaintiffs' contention that fraudulent concealment would toll the statute of limitations, the court determined that Plaintiffs would have to demonstrate that Defendants' knowingly concealed or failed to disclose information in order to mislead Plaintiffs and that Plaintiffs could not have discovered the cause of action while exercising reasonable care because of the concealment. The court found that because (1) Plaintiffs had acknowledged in their complaint that they had knowledge of the mold the day before closing and began to suffer physical effects within two weeks of closing, (2) Tony Maher had told Plaintiffs in late August 2017 that they would have to sue Defendants in order to make them act, and (3) Defendants failed to act thereafter, Plaintiffs could not obtain relief on the basis of fraudulent concealment.

With regard to Plaintiffs' reliance on Tennessee Code Annotated § 28-3-202, the trial court explained that this was a statute of repose, rather than a statute of limitations, and therefore did not affect the timeliness of Plaintiffs' complaint. In relation to Plaintiffs' "emergency motions," the court explained that it could not grant immediate relief to Plaintiffs without a hearing on the merits or in the absence of statutory authority that would afford such relief. Concerning Plaintiffs' dissatisfaction with the court's entry

of the order of dismissal, the trial court indicated that Defendants' counsel had submitted a proposed order following the March 23, 2021 hearing and that the court did not act on the order for at least ten days. During the interim, Plaintiffs submitted no alternate proposed order.

The trial court acknowledged that Plaintiffs had made warranty claims based on Tennessee Code Annotated § 47-18-1402; however, the court determined that this statute applied to consumer products and that a house was not a product. Finally, with reference to Plaintiffs' arguments that the trial court was biased or had otherwise deprived Plaintiffs of their constitutional rights, the court stated:

> The Court understands that [Plaintiffs] are displeased with the Court's rulings. However, [Plaintiffs'] Complaint was not timely filed. The Court made its determination based on the applicable statute of limitations. The fact that the Defendants have appeared before this Court in previous litigation had no bearing on the Court's determination in this litigation. Regarding [Plaintiffs'] claim that the Court denied them due process, the Court finds the argument to be without merit. The Court dismissed the Complaint pursuant to Tennessee Code Annotated § 28-3-105. [Plaintiffs] do not argue that the Tennessee Code Annotated § 28-3-105 is unconstitutional as applied to them. The Court has addressed all of the matters pending before the Court in this litigation. The Court finds that [Plaintiffs] have failed to establish that there has been a clear error of law to warrant altering or amending any of its orders. [Plaintiffs'] Motions are DENIED.

Plaintiffs filed a motion to alter or amend on May 14, 2021, reiterating many of their earlier arguments. The trial court entered an order on May 18, 2021, explaining that (1) it had ruled on all matters by order entered May 7, 2021, and (2) Plaintiffs had already appealed to this Court. The trial court therefore determined that it no longer maintained subject matter jurisdiction in the action and declined to rule on Plaintiffs' May 14, 2021 motion. This appeal followed.

## II. Issues Presented

Plaintiffs present the following issues for our review, which we have quoted here as they appear in Plaintiffs' appellate brief:

1. Whether it was a "Breach of Contract" by [Defendants] when Tony Maher, COO for John Maher Builders, Inc., knew about the mold in the residential property prior to closing, and then intentionally sold the residential property to [Plaintiffs] on August 4, 2017, with the knowledge that there was mold in the property?.

2. Whether Tony Maher admitting to Spring Hill Police Detective Robert Carden that he was aware that there was mold in the property but did not disclose this information in the Tennessee Residential Property Condition "Disclosure Form" as required by Tenn. Code Ann. § 66-5-202 is a violation of Tenn. Code Ann. § 66-5-202 and a resultant "Breach of Contract?" Based on the case law ***Ralph Hall Et Al. V. Jimmy D. Tabb Et Al.*** W2020-00740-COA-R3-CV— (March 25, 2021), the Appellate Court found that, "*[that the Tabbs] were deceptive and that they had an affirmative duty to disclose the same on the [Disclosure Form]*."

3. Whether the answer to question (1) "breach of contract", allows the [Plaintiffs] an immediate ruling, at minimum, for "Default Judgment" based on "Intentional Fraud" and "Breach of Contract", or to allow a "Final Judgement with Prejudice" against the [Defendants]?

4. Whether the answers to questions 1 and 2, also on the same day that [Plaintiffs] closed on their property also became an act of "theft" according to Tenn. Code. Ann. § 39-14-154 by (b)(1)(A)(i), (2)(A)(B)(C)(i)(ii)?

5. Whether the Court violated [Plaintiffs'] rights by not allowing [Plaintiffs] use of Tenn. Code Ann. § 47-18-1402, Warranty Extension Period when a property/home was determined by Appellate Court rulings to be a product in ***Dixon v. Mountain City Constr. Co***., 632 S.W.2d 538, 541 (Tenn. 1982) which [Plaintiffs] presented this case law in their Complaint and almost every motion filed?

6. Whether [Plaintiffs] are entitled to a "Default" or "Final" Judgment based on the Court depriving [Plaintiffs] of their right of using Tenn. Statute, Tenn. Code Ann. § 47-18-1402 where their property is still under warranty to this day?

7. Whether [Plaintiffs'] demand for a refund of their monies per Tenn. Code. Ann. § 39-14-154 was a failure by JMB to not pay within 10 days for the act of "theft", that the act of "theft" did occur according to Tenn. Code. Ann. § 39-14-154?

8. Whether the "Date of Service" change by the Court from January 12, 2021, to January 27, 2021, in error, and did the error prevent a "default judgment" for [Plaintiffs]?

9. Whether the Court's ruling to dismiss the Plaintiff[s'] (13) merited and timely claims, in its entirety and with prejudice, violate the Rules of civil procedure and deprive [Plaintiffs'] rights to "Due Process of Law"?

10. Whether the Chancery Court failed to protect [Plaintiffs'] basic inalienable Constitutional Rights to "Due Process of Law" throughout the Court proceedings?

11. Whether the Court incorrectly dismissed [Plaintiffs'] Complaint based on using Tenn. Statute, 28-3-105 as the controlling law?

12. Whether the Chancery Court violated [Plaintiffs'] Constitutional Rights when the Court dismissed [Plaintiffs'] Complaint in its entirety?

13. Whether the Chancery Court applied an incorrect legal standard to reach the decision to dismiss [Plaintiffs'] Complaint in its entirety, against logic or proper reasoning, and cause an injustice to [Plaintiffs]?

14. Whether the Court violated the Rules of Civil Procedure when the Court failed to set a new hearing after its own admission of not including [Plaintiffs'] March 15, 2021 "Amended Emergency Motion and Memorandum of Law" in the March 23, 2021, Hearing in which the Court decided to dismiss the case in its entirety without including either the March 9th or the March 15th, 2021, Motions and Memorandums of Law?

15. Whether the Chancery Court violated [Plaintiffs'] Rights when it ordered the opposing party to argue [Plaintiffs'] March 15, 2021 "Amended Emergency Motion and Memorandum of Law" after [Defendants] had failed to respond and argue the Emergency Motion and Memorandum of Law on their own within the fifteen (15) day requirement by the Rules of Civil Procedure and subsequently [Defendants] fell under the Rule of Civil Procedure 12.08 waiving all rights to a Defense for [Defendants'] failure to respond to either the March 9 or the March 15, 2021 Motions and Memorandums of Law?

16. Whether the Chancery Court exceed its power and authority in its ruling dismissing all [Plaintiffs'] thirteen individual claims?

17. Whether all the Chancery Court's rulings were null and void due to the violations of [Plaintiffs'] rights to "Due Process of Law?"

18. Whether the errored rulings of the Chancery Court, and the prejudice treatment by the Court against [Plaintiffs], are [Plaintiffs] entitled to a Final Judgment against [Defendants]?

19. Whether the Chancery Court showed prejudice against [Plaintiffs] by providing latitude for [Defendants] and showing harsh treatment towards [Plaintiffs] provided an unlawful benefit to the Defendants/Appellees?

20. Whether based on the Laws, Authorities, and Preponderance of indisputable evidence that [Plaintiffs] presented to the Chancery Court, did the Chancery Court make an errored ruling in dismissing [Plaintiffs'] Complaint in its entirety?

21. Whether the Court failed to use the correct Controlling Law, which should have been "Breach of Contract," Tenn. Code Ann. § 28-3-109(a)(3)?

22. Whether the Court properly determined the "discovery" dates of issues discovered during each inspection in conformance with the Supreme Court's rulings for how the Court is to establish the date of discovery especially when the Builder/Defendants/Appellees demand that [Plaintiffs] provide those reports? (See Exhibit - SIMP-00A13 - Wayne Thurmon - Carpet Warranty Already Voided 11-27-17). (R. Vol. 2, Pg. 0263).

23. Whether the Chancery Court violated the Supreme Court and the Appellate Court ruling on how the Court is to determine the proper "gravamen" of each of [Plaintiffs'] individual claims? (R. Vol. 10, Pgs., 1325, Lines 22-31, 1326 Lines 48 & 49, 1327, Lines 1-17, 1243, 1244).

24. Whether the Court errored and violated [Plaintiffs'] Rights and deprived [Plaintiffs] of remedies they were entitled to based on failure to rule on "Abandonment" and "Fraud" by the Builder?

25. Whether [Plaintiffs'] property is still under warranty based on [Plaintiffs'] property being classified as a "product" according to the Appellate Court ruling in *Dixon v. Mountain City Constr. Co*., 632 S.W.2d 538, 541 (Tenn. 1982)?

26. Whether based on the fact that Tenn. Code Ann. § 66-36-103 has been allowed to be used in residential settings, "E.g., *Greeter Const. Co. v. Tice*, 11 S.W.3d 907, 910-11 (Tenn. Ct. App. 1999); *Lavy v. Carroll*, No. M2006-00805-COAR3-CV, 2007 Tenn. App. LEXIS 809, at **9-10 (Tenn. Ct. App. Dec. 26, 2007), and, *Custom Built Homes by Ed Harris v. McNamara*, No. M2004-02703-COA-R3-CV, 2006 Tenn. App. LEXIS 781, at **14-15 (Tenn. Ct. App. Dec. 11, 2006)," are [Plaintiffs] entitled to the same use and therefore their statute of limitations started on November 2018 extending [Plaintiffs'] Statute of Limitations to May of 2022?

27. Whether the Court errored in not providing a TRO to prevent [Plaintiffs'] property from going into foreclosure knowing it is the central evidence in this Complaint?

28. Whether the Court error by not enforcing the repeated Recommendations/Requirements of the Mold Expert in reports spanning two years that the Builder was to either provide temporary housing or to provide funds to [Plaintiffs] so that they could move in substitute housing due to the extreme toxic environment and causation of [Plaintiffs'] health crisis?

29. Whether the Court errored by not ruling on the fraudulent concealment and fraudulent misrepresentation when there were three times that [Defendants] could have disclosed the truth that the "Utility Penetrations" in the crawlspace were never sealed when they falsely stated that the utility penetrations were sealed?

30. Whether the Chancery Court violated [Plaintiffs'] rights when it failed to rule on RPC 1.6 for the financial and physical injury that [Defendants'] Attorney was to ensure that his Client did not cause financial of substantial physical harm to occur against [Plaintiffs]?

31. Whether the Court errored by not ruling on the theft according to Tenn. Code Ann § 39-14-154(b)(1)(A)(i), (2)(B),(c)(1): New home construction and home improvement services; offenses; penalties and restitution?

32. Whether the Court errored when it did not convert the Dismissal of the Complaint into a Rule 56 Procedure for Summary Judgement?

## III. Standard of Review

As our Supreme Court has explained concerning motions to dismiss for failure to state a claim under Tennessee Rule of Civil Procedure 12.02(6):

> A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Brown v. Tenn. Title Loans, Inc*., 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co*., 172 S.W.3d 512, 516 (Tenn. 2005)).

> In considering a motion to dismiss, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Tigg v. Pirelli Tire Corp*., 232 S.W.3d 28, 31-32 (Tenn. 2007) (quoting *Trau-Med [of Am., Inc. v. Allstate Ins. Co*.], 71 S.W.3d [691,] 696 [(Tenn. 2002)]). A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Crews v. Buckman Labs. Int'l, Inc*., 78 S.W.3d 852, 857 (Tenn. 2002). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo.

*Webb v. Nashville Area Habitat for Humanity, Inc*., 346 S.W.3d 422, 426 (Tenn. 2011) (other internal citations omitted).

We recognize that Plaintiffs are *pro se* litigants and respect their decision to proceed self-represented. With regard to self-represented litigants, this Court has explained:

> *Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden. *Gray v. Stillman White Co.,* 522 A.2d 737, 741 (R. I. 1987). Conducting a trial with a *pro se* litigant who is unschooled in the intricacies of evidence and trial practice can be difficult. *Oko v. Rogers,* 125 Ill. App.3d 720, 81 Ill. Dec. 72, 75, 466 N.E.2d 658, 661 (1984). Nonetheless, trial courts are expected to appreciate and be understanding of the difficulties encountered by a party

who is embarking into the maze of the judicial process with no experience or formal training.

*Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). Although parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003). In addition, this Court must "be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Id.* Moreover, "[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts." *See Chiozza v. Chiozza*, 315 S.W.3d 482, 487 (Tenn. Ct. App. 2009) (quoting *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000)).

## IV. Applicability of Tennessee Code Annotated § 28-3-105 to Plaintiffs' Claims Alleging Breach of Contract and Warranty

Several of Plaintiffs' issues address the question of whether the trial court improvidently dismissed Plaintiffs' breach of contract claims, including claims asserting breach of any express or implied warranties contained in the parties' contract. Plaintiffs contend that they properly stated claims of breach of contract because, *inter alia*, (1) Defendants sold the home in question to Plaintiffs with knowledge that mold existed in the crawl space and (2) Defendants did not disclose the existence of mold on the residential property disclosure statement in accordance with Tennessee Code Annotated § 66-5-202 (2015) (providing that a home owner shall provide to a purchaser a "residential property disclosure statement in the form provided in this part regarding the condition of the property, including any material defects known to the owner."). Plaintiffs further postulate that the trial court erroneously determined that the gravamen of their claims concerned construction defects and Defendants' refusal to remedy those defects. Plaintiffs assert that the trial court should have applied the six-year statute of limitations found in Tennessee Code Annotated § 28-3-109(a)(3) (2017) to the breach of contract claims, thus rendering those claims timely. For these reasons, Plaintiffs argue that they are entitled to an immediate final or default judgment.

The overarching issue to be addressed with regard to Plaintiffs' allegations concerning their breach of contract claims is whether the trial court properly determined that the gravamen of the claims was for injury to Plaintiffs' real property rather than breach of contract. In so ruling, the trial court relied upon this Court's opinion in *Kirby Farms*, 773 S.W.2d at 250, wherein the plaintiffs, who were purchasers of condominiums built by the developer defendants, filed a class action lawsuit concerning construction defects and asserted claims of, *inter alia*, breach of express and implied warranties based on their contracts with the developers. *See id*. at 250. The trial court in *Kirby Farms* granted summary judgment to the developers based on Tennessee Code Annotated § 28-

3-105, and the plaintiffs appealed to this Court. *Id*. On appeal, this Court was asked to determine whether the six-year statute of limitations applicable to claims of breach of contract found in Tennessee Code Annotated § 28-3-109 should have been applied. *Id*.

The *Kirby Farms* Court concluded that the trial court had properly applied Tennessee Code Annotated § 28-3-105 as a bar to the plaintiffs' claims, stating:

> It is well settled in this state that the gravamen of an action, rather than its designation as an action for tort or contract, determines the applicable statute of limitations. *Pera v. Kroger Co*., 674 S.W.2d 715, 719 (Tenn. 1984). The word "actions" in T.C.A. § 28-3-105 refers to the subject matter of the controversy and not to the remedial procedure. Whether an action for the recovery of damages to personal or real property results from a breach of contract or from a tort, independent of contract, is immaterial. *Williams v. Thompson*, 223 Tenn. 170, 172, 443 S.W.2d 447, 449 (1969).

> The facts in *Williams v. Thompson* are very similar to the present case. In *Williams*, the plaintiffs sued the builders of their residence, complaining of defects such as cracks in the walls, window and door frames out of alignment, settling of the foundation, and sinking of the house into the ground. Plaintiffs' complaint alleged the defendants breached an implied duty in the contract to construct the residence in a good and workmanlike manner. In holding the three-year statute rather than the six-year statute applicable, the court stated, "[A]lthough complainants' bill sounds in contract . . . the only injury alleged in the bill is physical injury to the residence which allegedly occurred and was known to complainants more than three years prior to commencing the action." *Id*., 443 S.W. at 449.

> In the present case, we find the gravamen of plaintiffs' complaint is for injury to real property. Paragraph seven of the second amended complaint declares, "This action is brought to recover damages to that property, sometimes referred to as the 'common areas,' which the named individual plaintiffs and other members of the class own as tenants in common." The complaint further alleges plaintiffs have expended large sums of money in attempts to repair the defects and request to be compensated for those expenditures.

> In Count I of the Second Amended Complaint, under the heading "Breach of Express Warranty" recovery is sought for structurally and functionally defective building components. In Count III, under the heading "Implied Warranties of Habitability, Quality and Merchantability"

- 13 -

recovery is sought, in paragraph 36, "for the repair and maintenance of the property, building and improvements of the development." In Count VII plaintiffs claim that defendants breached their fiduciary duty to the plaintiffs since they had control of the Homeowner's Association until August of 1978. Plaintiffs contend that defendants failed to keep adequate records, failed to disclose defective workmanship, failed to provide a reserve fund, misrepresented the amount of maintenance fees, and did other things to breach their fiduciary duties. We note that no specific damages were sought for any of these enumerated breaches of fiduciary duty separate and apart from a demand for total damages in the amount of $3,000,000 for all of the delineated actions.

When the damages for which recovery is sought represent the cost of repair or the replacement cost of property and such accrued damages are the result of negligent acts, the action is for damage to property and covered by T.C.A. § 28-3-105. *Harvest Corp. v. Ernst & Whinney*, 610 S.W.2d 727, 729 (Tenn. App. 1980). Although plaintiffs attempt to distinguish their case on the ground they are not alleging a tort, but suing simply because defendants failed to comply with their contract, which caused the damages complained of, their case cannot be so distinguished. *Williams v. Thompson*, *supra* 443 S.W.2d at 450 (rejecting this exact argument); *Prescott v. Adams*, 627 S.W.2d 134, 137 (Tenn. App. 1981). *Prescott* was an action brought by purchasers against vendors and a real estate agent for (1) fraud in the inducement of a contract, (2) misrepresentation, (3) negligence in the design of an improvement to real property, (4) breach of a fiduciary duty, and (5) breach of the implied warranties of marketability and habitability. The Court said that "since the gravamen of the complaint in this case is for damages to real property, we think all of the theories advanced by the plaintiffs are governed by the three year statute of limitations."

*Kirby Farms*, 773 S.W.2d at 251. The *Kirby Farms* Court therefore affirmed the trial court's grant of summary judgment. *Id*. at 252.

The analysis utilized in *Kirby Farms* has been adopted by this Court in other cases involving construction defects wherein the plaintiffs also alleged a breach of contract. *See*, *e.g.*, *Liggett v. Brentwood Builders, LLC*, No. M2007-00444-COA-R3-CV, 2008 WL 836115, at *3-4 (Tenn. Ct. App. Mar. 27, 2008); *Molin v. Perryman Constr. Co.*, No. 01-A-019705-CV-00232, 1998 WL 83737, at *1 (Tenn. Ct. App. Feb. 27, 1998); *Conley v. Jim Wright Constr. Co.*, No. 01-A-019012-CH-00440, 1991 WL 107871, at *1 (Tenn. Ct. App. June 21, 1991). *Liggett* involved the plaintiffs' purchase of a newly constructed home from the builder and their subsequent discovery of water leaks throughout the home. 2008 WL 836115, at *1. The plaintiffs complained about the leaks, and the

- 14 -

builder attempted repairs over a period of approximately three years. *Id*. The plaintiffs eventually filed a lawsuit against the builder, stating claims of fraud, breach of contract, consumer protection violations, negligent misrepresentation, and negligence. *Id*. at *2.

The trial court in *Liggett* granted summary judgment to the builder based on expiration of the three-year statute of limitations applicable to injuries to real property, Tennessee Code Annotated § 28-3-105 (2017), and this Court affirmed that ruling on appeal. *Id*. at *6. The *Liggett* Court determined that the gravamen of the action was based on an injury to real property and accordingly affirmed the trial court's application of Tennessee Code Annotated § 28-3-105 to the plaintiffs' claims alleging breach of contract. *Id*.

In *Molin*, the plaintiffs filed suit against the defendant construction company, which the plaintiffs had hired to renovate their home. *Molin*, 1998 WL 83737, at *1. Although the plaintiffs immediately noticed problems with the work that had been performed, they did not file suit right away because the defendant continued to make repairs. *Id*. The plaintiffs did eventually file a complaint alleging that the defendant had breached his contract with the plaintiffs by failing to exercise good workmanship; however, the trial court granted summary judgment to the defendant based on expiration of the three-year statute of limitations found in Tennessee Code Annotated § 28-3-105. *Id*. at *2.

On appeal, the *Molin* Court agreed that Tennessee Code Annotated § 28-3-105 contained the applicable statute of limitations. *Id*. at *4. As this Court explained:

> Both *Kirby Farms* and *Williams* support our conclusion that section 28-3-105 contains the appropriate statute of limitations for the action in this case. In the instant case, the gravamen of the Molins' complaint is for injury to real property. As in *Williams*, the complaint in this case sounds in contract denoting as the "cause of action" a "breach of contract." However, the injury alleged is the damage to the Molins' home. The complaint alleges that "[t]here are a number of leaks in the roof which [Perryman] has failed to correct. . . . [The Molins] have been injured as a result of [Perryman's] breach of contract. [They] have or will incur substantial expenses to repair the leaks and other damages caused by the water." In the proposed amendment, Appellants alleged that "[t]he floors are buckling, sagging and cracking. Floor joints have been crushed and twisted. Outside walls are bowing and sagging. . . . [The Molins] will have to incur substantial expense to correct these problems." Thus, even a consideration of the allegations in the proposed amendment reveals that there are no damages other than this injury to the real property which have been claimed by Appellants. *See Prescott v. Adams*, 627 S.W.2d 134, 137 (Tenn. Ct. App. 1981) ("The major criterion in ascertaining the gravamen of an action

- 15 -

is the kind of damage alleged."). Accordingly, we are of the opinion that section 28-3-105 applies to the facts in this case.

*Id*.

Similarly, in *Conley*, the plaintiffs asserted a claim of breach of their construction contract with the defendant construction company because their newly constructed home exhibited leaks. 1991 WL 107871, at *1. The trial court granted summary judgment to the defendant based on expiration of the three-year statute of limitations in Tennessee Code Annotated § 28-3-105, and the plaintiffs appealed. *Id*. On appeal, the *Conley* Court determined:

> [T]he gravamen of the action, rather than designation as an action for tort or contract, determines the applicable statute of limitations. Whether the action for recovery of damages results from a breach of contract or tort is immaterial. When the damages sought are the cost of repair or replacement of improvements to realty and the accrued damages result from the defendant's negligence, the action is for damage to real property governed by § 28-3-105.

*Id*. (internal citations omitted).

We note, however, that the concept of determining the "gravamen of the action" was subsequently clarified by our Supreme Court in *Benz-Elliott v. Barrett Enters*, *LP*, 456 S.W.3d 140 (Tenn. 2015). In *Benz-Elliott*, the plaintiff filed suit against the purchasers of a portion her real property, asserting that although the parties had signed a contract of sale providing that the plaintiff would retain ownership of a sixty-foot-wide strip of the property as a means of ingress and egress to her remaining property, the warranty deed ultimately executed by the parties failed to contain such reservation. *Id*. at 142. The plaintiff filed suit more than three years after the sale was concluded, alleging claims of breach of contract, intentional misrepresentation, and negligent misrepresentation. *Id*. at 144. The defendants asserted as an affirmative defense expiration of the three-year statute of limitations found in Tennessee Code Annotated § 28-3-105. *Id*. Following a trial on the merits, the trial court determined that the plaintiff had proven that the parties' contract was breached and awarded her damages resulting from that breach. *Id*. at 146.

On appeal to this Court, the *Benz-Elliott* defendants posited, *inter alia*, that the plaintiff's claim was barred by the three-year statute of limitations, and this Court agreed, determining that the gravamen of the claim was an action for damages to real property. *Benz-Elliott v. Barrett Enters*, *LP*, No. M2013-00270-COA-R3-CV, 2013 WL 3958386 (Tenn. Ct. App. July 29, 2013). The plaintiff appealed that ruling to our Supreme Court, and the High Court reversed, determining that the gravamen of the plaintiff's claim was

breach of contract. *Benz-Elliott*, 456 S.W.3d at 152. In so ruling, the Supreme Court set forth the proper analysis to be conducted with respect to this issue, elucidating:

> It is oft-recited law in this State that to determine the governing statute of limitations, a court must ascertain the "'gravamen of the complaint.'" *Whaley* [*v. Perkins*], 197 S.W.3d [665,] 670 [(Tenn. 2006)] (quoting *Gunter* [*v. Lab Corp. of Am.*], 121 S.W.3d [636,] 638 [(Tenn. 2003)]); *see also Mike v. Po Group, Inc.*, 937 S.W.2d 790, 793 (Tenn. 1996); *Alexander v. Third Nat'l Bank*, 915 S.W.2d 797, 798 (Tenn. 1996); *Vance v. Schulder*, 547 S.W.2d 927, 931 (Tenn. 1977). However, defining what this principle means has proven difficult over time.

> Many Tennessee decisions have explained that ascertaining the gravamen requires a court to determine the basis for which damages are sought. However, early decisions of this Court focused exclusively upon the type of injuries for which damages were sought and described the legal basis of the action as "immaterial." *Williams v. Thompson*, 223 Tenn. 170, 443 S.W.2d 447, 449 (1969).

> In *Williams*, the defendants contracted to sell the plaintiffs a lot and to build the plaintiffs a home on it. 443 S.W.2d at 449. The defendants performed the contract, but after the plaintiffs moved into the home on January 25, 1963, they noticed "cracks in the walls, window and door frames out of alignment, settling of the foundation and sinking of the house into the ground." *Id*. at 448. The plaintiffs filed suit on July 19, 1968, "alleging a breach of an implied warranty in the contract of sale, dated July 23, 1962, in that defendants did not construct the residence in a good and workmanlike manner." *Id*. at 449. This Court held that the action was governed by the three-year statute of limitations because the complaint alleged an injury to real property, even though the legal basis of the claim was an alleged breach of an implied warranty in the sale contract. *Id*. at 449.

> Even when more than one cause of action was alleged in a single complaint, language in prior decisions of this Court seemed to suggest that the complaint should be distilled to a single "gravamen" based on the type of damages requested. *See, e.g.*, *Whaley*, 197 S.W.3d at 670 ("The 'applicable statute of limitations . . . will be determined according to the gravamen of the complaint.'" (quoting *Gunter*, 121 S.W.3d at 638)); *Vance*, 547 S.W.2d at 931 (same).

> More recently we have observed that "gravamen of the complaint" is a "rather elliptical phrase" which "refers to the substantial point, the real

- 17 -

purpose, or the object" of an action. *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 457 (Tenn. 2012) (internal quotation marks omitted). We have also said that gravamen is not dependent upon the "designation" or "form" litigants ascribe to an action. *Id.* (quoting *Pera v. Kroger Co.*, 674 S.W.2d 715, 719 (Tenn. 1984); *Callaway v. McMillian*, 58 Tenn. 557, 559 (1872)).

But our prior decisions have not specifically discussed the reality that, at least since the adoption of the Tennessee Rules of Civil Procedure, parties may assert alternative claims and defenses and request alternative relief in a single complaint, regardless of the consistency of the claims and defenses. Tenn. R. Civ. P. 8.01, 8.05, 18.01, 18.02; *see also Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006) ("[A]lternative pleadings are expressly permitted, regardless of consistency . . . ."); *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 909 (Tenn. 1999) (explaining that alternative pleadings are permitted). Such alternative claims may well be subject to differing statutes of limitations. An analysis such as that employed in *Williams* and early decisions would, in fact, be unworkable as it would require a court to identify a single gravamen from a complaint that alleges alternative, and potentially inconsistent, claims. We agree with the Court of Appeals that, in choosing the applicable statute of limitations, courts must ascertain the gravamen of each claim, not the gravamen of the complaint in its entirety. *Black v. Sussman*, No. M2010-01810-COA-R3-CV, 2011 WL 2410237, at *8 (Tenn. Ct. App. June 9, 2011); *Bluff Springs Apartments, Ltd. v. Peoples Bank of the South*, No. E2009-01435-COA-R3-CV, 2010 WL 2106210, at *10 (Tenn. Ct. App. May 26, 2010); *Mid-South Indus., Inc. v. Martin Mach. & Tool, Inc.*, 342 S.W.3d 19, 31-32 (Tenn. Ct. App. 2010); *Craighead v. BlueCross BlueShield of Tenn., Inc.*, No. M2007-01697-COA-R10-CV, 2008 WL 3069320, at *8 (Tenn. Ct. App. July 31, 2008); *Lewis v. Caputo*, No. E1999-01182-COA-R3-CV, 2000 WL 502833, at *4 (Tenn. Ct. App. Apr. 28, 2000)[.]

*Id.* at 147-49 (footnote and other internal citations omitted).

Having determined that a court must consider each claim asserted, the High Court in *Benz-Elliott* proceeded to set forth the proper analysis for determining the gravamen of each claim, adopting the following two-step approach:

[A] court must first consider the legal basis of the claim and then consider the type of injuries for which damages are sought. This analysis is necessarily fact-intensive and requires a careful examination of the allegations of the complaint as to each claim for the types of injuries asserted and damages sought.

- 18 -

*Id*. at 151.

Based upon our Supreme Court's instruction from *Benz-Elliott*, we will therefore proceed in the instant action to determine both the legal basis of the claims in question and the type of injuries for which damages are sought. Plaintiffs averred in their complaint that their home, built by Defendants, was uninhabitable and toxic due to mold therein. Plaintiffs claimed, *inter alia*, that their home was "Incomplete, Unsealed, Unfinished containing numerous undisclosed/negligently and fraudulently concealed Code Violations (omissions), with defective conditions at the time of sale), defective design, defective construction, defective and non-conforming construction by poor workmanship." Plaintiffs also claimed that Defendants had utilized "defective/damaged building materials (infested with mold and other microbial growth), that were purposefully hidden and not disclosed by JMB as required by Law." Plaintiffs complained that Defendants had failed and refused to remedy the defective conditions despite Plaintiffs' warranty claims, stating that Tony Maher told them in August 2017 that "Plaintiffs would have to sue [Defendants] and only then if the Court ordered it would they do something." Plaintiffs further averred that because of Defendants' faulty construction and subsequent refusal to remedy the issues with the home, the home had been categorized as a "total loss" and would have to be "torn down, the grounds treated, and then it must be rebuilt in accordance with all required codes and with all new materials."

In addition to alleging injury to their real property, Plaintiffs alleged that Defendants breached their contract with Plaintiffs, including any express or implied warranties contained therein, not only because of Defendants' alleged negligent construction practices but also because of Defendants' alleged acts of "abandoning" Plaintiffs after the sale and refusing to honor Plaintiffs' warranty claims. Plaintiffs claimed that Defendants "made promises they never intended to keep" and declined to investigate Plaintiffs' claims or make repairs pursuant to Plaintiffs' one-year home warranty.[1] Based on our review of the legal basis for Plaintiffs' claims, we conclude that Plaintiffs clearly alleged alternate claims sounding in breach of contract.

With regard to the type of injuries for which damages were sought, in addition to damages for injury to their property, Plaintiffs asserted that they were entitled to damages

---

[1] Plaintiffs attached a copy of their sales contract as an exhibit to their complaint. This contract provides that the seller, JMB, was providing to the buyer, Mr. Simpkins, a "2/10 warranty." However, the contract does not provide any further explanation concerning this warranty or its terms. We note that "exhibits attached to the complaint whose authenticity is unquestioned" may be considered by the trial court without converting the Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss to a Tennessee Rule of Civil Procedure 56 motion for summary judgment. *Felker v. Felker*, No. W2019-01925-COA-R3-CV, 2021 WL 3507745, at *4 (Tenn. Ct. App. Aug. 10, 2021).

for monetary losses, including a refund of the purchase price of the home, moving expenses, temporary housing costs, storage costs, medical expenses, loss of revenue from their home-based business, diminution in value of the home, and other losses. As this Court has previously stated, "Tennessee law allows recovery of all damages which are the normal and foreseeable result of the breach of a contract." *Bush v. Cathey*, 598 S.W.2d 777, 783 (Tenn. Ct. App. 1979).[2] Such recovery can, in proper circumstances, include such things as temporary housing and moving costs. *See id*. Moreover, generally speaking, the cost of repair and diminution in value are also remedies that may be granted due to a finding of breach of contract in appropriate circumstances. *See*, *e.g.*, *Wilkes v. Shaw Enters.*, *LLC*, No. M2006-01014-COA-R3-CV, 2008 WL 695882, at *10 (Tenn. Ct. App. Mar. 14, 2008). Therefore, predicated on the legal basis asserted for Plaintiffs' claims and the type of injuries for which damages were sought, we conclude that the trial court erroneously found that the gravamen of Plaintiffs' breach of contract claims was actually for damage to real property in accordance with *Kirby Farms*. As such, Plaintiffs' breach of contract claims, including claims asserting breach of express or implied warranty, were subject to the six-year statute of limitations codified in Tennessee Code Annotated § 28-3-109, and the trial court erred in dismissing those claims based on expiration of the three-year statute of limitations found in Tennessee Code Annotated § 28-3-105.[3] We will now turn to Plaintiffs' issues concerning whether the trial court should have tolled the accrual of any applicable three-year statute of limitations.

V. Discovery Rule

Plaintiffs contend that the trial court erred by declining to determine that the accrual of the applicable statute of limitations was tolled by application of the discovery rule. As this Court has previously explained concerning such doctrine:

> In general, the inquiry of when a plaintiff knew of or should have discovered a cause of action is a question of fact not properly decided on summary judgment. *See City State Bank v. Dean Witter Reynolds, Inc.*, 948

---

[2] We note, however, that the "purpose of assessing damages in breach of contract cases is to place the plaintiff as nearly as possible in the same position she would have been in had the contract been performed, but the nonbreaching party is not to be put in any better position by recovery of damages for the breach of the contract than he would have been if the contract had been fully performed." *Lamons v. Chamberlain*, 909 S.W.2d 795, 801 (Tenn. Ct. App. 1993).

[3] In their appellate brief, Plaintiffs repeatedly request that this Court award them an immediate or default judgment. This we cannot do. Appellate courts are courts "of appeals and errors," "limited in authority to the adjudication of issues that are presented and decided in the trial courts." *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976). Although due process generally requires that parties receive "a fair trial in a fair tribunal," *see State v. White*, 362 S.W.3d 559, 566 (Tenn. 2012), such trial must be conducted by a trial court. Moreover, Plaintiffs are not entitled to a default judgment in this matter because Defendants filed a motion to dismiss in response to Plaintiff's complaint, which means that they did not "fail[] to plead or otherwise defend" as required by Tennessee Rule of Civil Procedure 55.01.

S.W.2d 729, 735 (Tenn. App. 1996). If the facts, however, are not in dispute and clearly show that a cause of action has accrued and that the statute of limitations has run, a summary judgment may be entered.

"A defense predicated on the statute of limitations triggers the consideration of three components—the length of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines. All of these elements are inter-related and, therefore, should not be considered in isolation." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012). While the burden of proof is upon the party asserting the bar of the statute of limitations to show the bar, when that showing is made, the burden shifts to the other party to show an exception. *Id*.

\* \* \*

Under the discovery rule, the statute of limitations will only begin to run when the plaintiff has actual knowledge of the claim, or when the plaintiff has actual knowledge of facts sufficient to put a reasonable person on notice that she has suffered an injury as a result of wrongful conduct. For the purposes of both the discovery rule and the doctrine of fraudulent concealment, whether a plaintiff exercised reasonable care and diligence in discovering her injury is usually a fact question for the trier of fact to determine.

*Coffey v. Coffey*, 578 S.W.3d 10, 21-22 (Tenn. Ct. App. 2018).

As our Supreme Court has further explained concerning the discovery rule in Tennessee:

In 1974, this Court recognized and adopted the discovery rule in response to the "harsh and oppressive" results of the traditional accrual rule in circumstances in which the injured party was unaware of the injury. *Teeters v. Currey*, 518 S.W.2d [512,] 516 [(Tenn. 1974)]. The Court, expressly limiting its decision to surgical malpractice cases, held that "the cause of action accrues and the statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care and diligence for his own health and welfare, should have discovered the resulting injury." *Teeters v. Currey*, 518 S.W.2d at 517. In his concurring opinion, Justice Harbison noted that "[i]n the vast majority of personal injury cases . . . the date of the injury and the date of discovery are simultaneous." *Teeters v. Currey*, 518 S.W.2d at 518 (Harbison, J., concurring); *see also Cada v. Baxter Healthcare Corp*., 920 F.2d at 450.

The Court later expanded the application of the discovery rule to many other injuries to persons or property. *See McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn. 1975) (holding that "in tort actions . . . the cause of action accrues . . . when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered."); *see also* Justin N. Joy, Comment, *Civil Procedure—Pero's Steak & Spaghetti House v. Lee: Tennessee Declines to Extend the Discovery Rule to Claims of Converted Negotiable Instruments*, 34 U. Mem. L. Rev. 475, 487 & n.63 (2004) (cataloging the causes of action to which the discovery rule applies). The Court has also declined to apply the discovery rule to certain types of claims. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d [614,] 624 [(Tenn. 2002)] (declining to apply the discovery rule in cases involving the conversion of negotiable instruments).

Following our decision in *Teeters v. Currey*, this Court refined the discovery rule to make clear that it included not only the discovery of the injury but also the discovery of the source of the injury. *Sherrill v. Souder*, 325 S.W.3d 584, 595 (Tenn. 2010) (holding that the cause of action accrues when the plaintiff discovers both the injury and the "identity of the person or persons whose wrongful conduct caused the injury"); *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998) (holding that the cause of action accrues when the plaintiff knows or should know that it sustained an injury "as a result of wrongful . . . conduct by the defendant"); *Wyatt v. A-Best, Co.*, 910 S.W.2d 851, 855 (Tenn. 1995) (holding that "a prerequisite to the running of the statute of limitations is [the] plaintiff's reasonable knowledge of the injury, its cause and origin"); *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982) (holding that "no judicial remedy [is] available to [a] plaintiff until he [or she] discover[s], or reasonably should have discovered, (1) the occasion, the manner and means by which a breach of duty occurred that produced his [or her] injury; and (2) the identity of the defendant who breached the duty.").

The Court also made it clear that the discovery rule does not delay the accrual of a cause of action and the commencement of the statute of limitations until the plaintiff knows the full extent of the damages, *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 849 (Tenn. 2010); *Weber v. Moses*, 938 S.W.2d 387, 393 (Tenn. 1996) (holding that the plaintiff cannot delay filing suit "until all injurious effects or consequences of the actionable wrong are fully known"), or until the plaintiff knows the specific type of legal claim it has, *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d at 533; *see also Stanbury v. Bacardi*, 953

S.W.2d 671, 677 (Tenn. 1997); *Wyatt v. A-Best, Co.*, 910 S.W.2d at 855. The discovery rule is not intended to permit a plaintiff to delay filing suit until the discovery of all the facts that affect the merits of his or her claim. *Mills v. Booth*, 344 S.W.3d 922, 929 (Tenn. Ct. App. 2010) (quoting *Burk v. RHA/Sullivan, Inc.*, 220 S.W.3d 896, 902 (Tenn. Ct. App. 2006)).

Under the current discovery rule, a cause of action accrues and the statute of limitations begins to run not only when the plaintiff has actual knowledge of a claim, but also when the plaintiff has actual knowledge of "facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct." *Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn. 1995) (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)). This latter circumstance is variously referred to as "constructive notice" or "inquiry notice." Quoting the Iowa Supreme Court, we have explained that inquiry notice "charges a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed. . . . [O]nce a plaintiff gains information sufficient to alert a reasonable person of the need to investigate 'the injury,' the limitation period begins to run." *Sherrill v. Souder*, 325 S.W.3d at 593 n.7 (quoting *Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 461 (Iowa 2008)); *see also Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996) (defining inquiry notice as the "notice which a plaintiff would have possessed after due investigation").

*Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 458-59 (Tenn. 2012) (footnotes omitted).

In the instant action, the trial court found that the discovery rule would not serve to toll accrual of the statute of limitations due to the factual allegations contained in Plaintiffs' complaint. Based upon our thorough review of the complaint, we agree.

In their complaint, Plaintiffs averred that they were shown mold in the crawl space of the home by Defendants' agent on August 3, 2017, the day before Plaintiffs were scheduled to purchase the home. Plaintiffs also stated that they subsequently sent letters to Defendants in August 2017, September 2017, and November 2017, notifying Defendants that "microbial issues were present and causing deterioration in multiple areas of the property." Plaintiffs further claimed that they informed Defendants in these letters of the numerous health issues Plaintiffs had begun to experience, as demonstrated by the copies of the letters attached to Plaintiffs' complaint. In the letters, Plaintiffs also detailed their observations of mold on the walls, ceilings, and flooring within the home; moisture issues; spongy floors; and the smell of mold inside the house.

Presuming all of these factual allegations to be true, as we must when reviewing the grant of a motion to dismiss, *see Webb*, 346 S.W.3d at 426, we agree with the trial court's determination that Plaintiffs could not rely on the discovery rule to toll the statute of limitations herein. The facts alleged in the complaint clearly demonstrated that Plaintiffs' cause of action accrued well before December 30, 2017; however, Plaintiffs did not file their complaint until December 30, 2020, more than three years following accrual. Based on the factual averments in their complaint, there can be no question that Plaintiffs possessed "actual knowledge of facts sufficient to put a reasonable person on notice that [they had] suffered an injury as a result of wrongful conduct" by Defendants in August, September, and November 2017. *See Coffey*, 578 S.W.3d at 21-22. As such, the trial court correctly concluded that the discovery rule did not operate to toll the statute of limitations herein.

### VI. Tolling Pursuant to Tennessee Code Annotated § 66-36-103

Plaintiffs also assert that the statute of limitations should have been tolled pursuant to Tennessee Code Annotated § 66-36-103 (Supp. 2021), which provides in pertinent part:

(a) In actions brought against a prime contractor, remote contractor, or design professional related to an alleged construction defect, the claimant shall, before filing an action, serve written notice of claim on the prime contractor, remote contractor, or design professional, as applicable. The claimant shall endeavor to serve the notice of claim within fifteen (15) days after discovery of an alleged defect, or as required by contract. Unless otherwise prohibited by contract, the failure to serve notice of claim within fifteen (15) days does not bar the filing of an action, subject to § 66-36-102.

\* \* \*

(l) A claimant's written notice of claim under subsection (a) tolls the applicable statute of limitations until the later of:

(1) One hundred eighty (180) days after the prime contractor, remote contractor, or design professional receives the notice; or

(2) Ninety (90) days after the end of the correction or repair period stated in the offer, if the claimant has accepted the offer. By stipulation of the parties, the period may be extended and the statute of limitations is tolled during the extension.

- 24 -

Tennessee Code Annotated § 66-36-101 (Supp. 2021), the definitional section applicable to the above statute, provides in pertinent part:

> As used in this chapter:
>
> (1)    "Action" means any civil action or binding dispute resolution proceeding for damages or indemnity asserting a claim for damage to or loss of <u>commercial property</u> caused by an alleged construction defect, but does not include any civil action or arbitration proceeding asserting a claim for alleged personal injuries arising out of an alleged construction defect;
>
> (2)    "Claimant" means an owner, including a subsequent purchaser, tenant, or association, who asserts a claim against a prime contractor, remote contractor, or design professional concerning a construction defect;
>
> (3)    "Commercial property" means all property that is not residential property[.]

(Emphasis added.)

The trial court herein determined that the tolling provisions contained in Tennessee Code Annotated § 66-36-103 were inapplicable to the case at bar because Plaintiffs' property is residential rather than commercial. We agree. As this Court has previously explained concerning the application of Tennessee Code Annotated § 66-36-101, *et seq.*:

> The term 'action' as used in Tenn. Code Ann. § 66-36-103 is defined in Tenn. Code Ann. § 66-36-101 as follows:
>
> > (1)    "Action" means any civil action for damages or indemnity asserting a claim for damage to or loss of commercial property caused by an alleged construction defect, but does not include any civil action or arbitration proceeding asserting a claim for alleged personal injuries arising out of an alleged construction defect;
>
> Tenn. Code Ann. § 66-36-101(1) (2004) (emphasis added). Commercial property is defined as "all property which is not residential property. Residential property is property upon which a dwelling or improvement is constructed or to be constructed consisting of one dwelling unit intended as

a residence of a person or family." Tenn. Code Ann. § 66-36-101(3) (2004).

The language of the statute is clear and unambiguous. It requires a claimant to provide notice prior to filing an action "for damage to or loss of *commercial property* . . . ," not residential property. Tenn. Code Ann. § 66-36-101(1) (2004) (emphasis added). As the statute is clear and unambiguous, we apply its plain meaning. *See Shelby County Health Care Corp.* [*v. Nationwide Mut. Ins. Corp*.], 325 S.W.3d [88,] 92 [(Tenn. 2010)].

In the case now before us on appeal, the Trial Court specifically found that the Contract was for the construction of a residential garage. The evidence in the record does not preponderate against this finding. As Defendant's counterclaim is an action for damage to or loss of residential property, not commercial property, Defendant was not required to comply with Tenn. Code Ann. § 66-36-101 *et seq.*

*Bates v. Benedetti*, No. E2010-01379-COA-R3-CV, 2011 WL 978195, at *5-6 (Tenn. Ct. App. Mar. 21, 2011). Similarly, in this matter, it is undisputed that Plaintiffs' claims relate to residential property rather than commercial property. Therefore, the provisions of Tennessee Code Annotated § 66-36-101, *et seq.*, are inapplicable.

Plaintiffs argue that Tennessee Code Annotated § 66-36-103 has been applied in residential settings, relying on *Greeter Constr. Co. v. Tice*, 11 S.W.3d 907 (Tenn. Ct. App. 1999); *Lavy v. Carroll*, No. M2006-00805-COA-R3-CV, 2007 WL 4553016 (Tenn. Ct. App. Dec. 26, 2007); and *Custom Built Homes by Ed Harris v. McNamara*, No. M2004-02703-COA-R3-CV, 2006 WL 3613583 (Tenn. Ct. App. Dec. 11, 2006). We determine, however, that Plaintiffs' reliance upon these cases is misplaced. In each of these cases, this Court discussed the general principle of providing notice of a breach of contract and the opportunity to cure before termination of the contract; none of these cases contain any discussion or application of Tennessee Code Annotated § 66-36-101, *et seq*. *See Greeter*, 11 S.W.3d at 910; *Lavy*, 2007 WL 4553016, at *3; *Custom Built Homes*, 2006 WL 3613583, at *5. Accordingly, this argument is unavailing.

VII. Fraudulent Concealment

Plaintiffs additionally assert that the trial court erred by declining to determine that the accrual of the applicable statute of limitations was tolled by reason of the doctrine of fraudulent concealment. In their complaint, Plaintiffs averred that Defendants had told them on "the day of the Final Walkthrough" before closing, which undisputedly occurred in August 2017, that the utility penetrations in the crawl space had been sealed with foam. Plaintiffs claimed, however, that it was not until January 17, 2018, when they received the inspection report from Middle Tennessee Mold Remediation ("mold

inspection"), that they learned this statement by Defendants was untrue. According to Plaintiffs, the mold inspection report revealed for the first time that Defendants had falsely represented that the utility penetrations were sealed. Plaintiffs maintained that this failure to seal the utility penetrations contributed to the moisture and mold problems in the home.

As our Supreme Court has explained concerning the fraudulent concealment doctrine:

> For over a century now, Tennessee's courts have also held that the doctrine of fraudulent concealment will toll the running of a statute of limitations. This doctrine is one of the oldest exceptions to the statute of limitations. While the doctrine of fraudulent concealment shares many of the attributes of the doctrine of equitable estoppel, Tennessee's courts, like most courts, have recognized it as a free-standing doctrine.

> As it currently exists in Tennessee, the doctrine of fraudulent concealment is aligned with the discovery rule. Under the fraudulent concealment doctrine, the statute of limitations is tolled when "the defendant has taken steps to prevent the plaintiff from discovering he [or she] was injured." *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d [141,] 146 [(Tenn. 2001)].

> * * *

> A claim of fraudulent concealment to toll the running of a statute of limitations contains four elements. The plaintiff invoking the fraudulent concealment doctrine must allege and prove: (1) that the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so; (2) that the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence; (3) that the defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and (4) that the defendant concealed material information from the plaintiff by "'withholding information or making use of some device to mislead' the plaintiff in order to exclude suspicion or prevent inquiry."

> Plaintiffs asserting the doctrine of fraudulent concealment to toll the running of a statute of limitations must demonstrate that they exercised reasonable care and diligence in pursuing their claim. *See Vance v. Schulder*, 547 S.W.2d 927, 930 (Tenn. 1977); *Ray v. Scheibert*, 224 Tenn. 99, 104, 450 S.W.2d 578, 580-81 (1969). The statute of limitations is

tolled until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim. *See Fahrner v. SW Mfg., Inc*., 48 S.W.3d at 145. At the point when the plaintiff discovers or should have discovered the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim, the original statute of limitations begins to run anew, and the plaintiff must file his or her claim within the statutory limitations period.

*Redwing*, 363 S.W.3d at 461-63 (footnotes and other internal citations omitted).

In analyzing the fraudulent concealment issue, we determine a previous opinion from this Court to be instructive. *See Riccardi v. Carl Little Constr. Co*., No. E2020-00678-COA-R3-CV, 2021 WL 3137251 (Tenn. Ct. App. July 26, 2021). In *Riccardi*, the plaintiff homeowner sued the defendant builder, alleging negligent construction of a residence that was completed in 2007. *Id*. at *1. The homeowner asserted in his 2014 complaint that the builder had negligently built the home on non-compacted fill dirt, causing structural damage to the residence from settling of the dirt. *Id*. According to the homeowner, the home began to develop cracks in the walls and other issues soon after it was completed, and the builder repeatedly assured the homeowner over the ensuing years that the issues were due to "natural settling." *Id*. However, in March 2014, the builder revealed to someone inspecting the home, in the presence of the homeowner, that the fill dirt beneath the home had not been properly compacted. *Id*. The homeowner claimed that this was the first occasion upon which he learned that there was any issue with the home's structural integrity, thus rendering his September 2014 complaint timely. *Id*.

The *Riccardi* trial court granted summary judgment in favor of the builder premised upon expiration of the applicable statute of limitations. *Id*. at *3. The trial court rejected the homeowner's argument that the statute of limitations should be tolled due to the builder's fraudulent concealment of the fact that the fill dirt upon which the home was constructed was not compacted. *Id*. Upon the homeowner's appeal, this Court vacated the trial court's grant of summary judgment in favor of the builder, determining that genuine issues of material fact existed concerning when the homeowner's action accrued and whether the doctrine of fraudulent concealment would apply to toll the statute of limitations. *Id*. at * 10.

Concerning application of the fraudulent concealment doctrine, the *Riccardi* Court determined that the homeowner had presented proof that the home was built on fill dirt that was not properly compacted and that this was a cause of the "excessive settlement problems" with the home. *Id*. The court noted that (1) the builder testified that he was on the job site daily during the home's construction; (2) the builder knew that the fill dirt beneath the home was not properly compacted, (3) the builder admitted this fact to a third

party at a later date and in the presence of the homeowner, (4) this fact would not have been readily observable or discoverable by the homeowner, and (5) the trier of fact could reasonably conclude from the evidence that the builder knew his assurances to the homeowner regarding "natural settling" were untrue. *Id*. This Court further noted that questions concerning fraud or fraudulent concealment were fact-intensive, typically presenting issues for the trier of fact that were inappropriate for summary disposition. *Id*. at *9.

Similarly, in this matter, Plaintiffs averred in their complaint that they were explicitly told by Tony Maher and JMB's project manager in August 2017 that the utility penetrations in the crawl space had been sealed with foam. Plaintiffs further averred that they learned on January 17, 2018, when they received the mold inspection report, that this had not been done. According to Plaintiffs, this was the first time they had knowledge of the fact that Defendants had falsely represented that the utility penetrations beneath the home were sealed. Plaintiffs also asserted that this failure to seal the utility penetrations contributed to the moisture and mold problems in the home.

We reiterate that when reviewing the trial court's grant of a motion to dismiss, this Court must review "the trial court's legal conclusions regarding the adequacy of the complaint de novo." *Webb*, 346 S.W.3d at 426. In doing so, this Court should presume that all factual allegations contained in the complaint are true and give Plaintiffs the benefit of all reasonable inferences. *Id*. This Court should only affirm the grant of a motion to dismiss when it appears that the "plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Id*. (citing *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)).

Accepting the allegations in Plaintiffs' complaint as true, we determine that Plaintiffs' factual allegations have satisfied the following elements required to demonstrate fraudulent concealment: (1) Defendants affirmatively concealed and/or failed to disclose material facts regarding a cause of the injury to Plaintiffs' property despite a duty to do so; (2) Defendants knew that Plaintiffs had been injured and the identity of the wrongdoer; and (3) Defendants concealed material information from Plaintiffs by "'withholding information or making use of some device to mislead' the plaintiff in order to exclude suspicion or prevent inquiry." *See Redwing*, 363 S.W.3d at 463. Moreover, "[w]hether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong" is typically a fact question for the trier of fact to determine. *Wyatt v. A-Best Co.*, 910 S.W.2d 851, 854 (Tenn. 1995).

We conclude that a trier of fact could determine that Plaintiffs, in the exercise of reasonable care and diligence, could not have discovered this potential cause of their injury until January 2018 due to Defendants' attempts to conceal this cause. If so, the statute of limitations would not have begun to run until that date, rendering Plaintiffs' claims subject to the three-year statute of limitations timely filed.

Based on the facts alleged by Plaintiffs in their complaint, we further conclude that it is not clear that Plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *See Webb*, 346 S.W.3d at 426. Ergo, we determine that the trial court erred by granting Defendants' motion to dismiss with respect to Plaintiffs' claims concerning injury to their property allegedly caused by Defendants' failure to seal the utility penetrations beneath the home, which were subject to the statute of limitations contained in Tennessee Code Annotated § 28-3-105 but which were allegedly fraudulently concealed by Defendants. We therefore vacate that portion of the trial court's judgment and remand those claims to the trial court for further disposition.

## VIII. Applicability of Tennessee Code Annotated § 39-14-154

Plaintiffs also urge that the trial court erred by failing to specifically rule on their claim brought pursuant to Tennessee Code Annotated § 39-14-154 (2018), which provides in pertinent part:

(a)    For purposes of this section, unless the context otherwise requires:

\* \* \*

(5)    "New home contractor" means any person who offers or provides new home construction services as a general contractor or a subcontractor, including, but not limited to, an architect or engineer;

(6)    "New home construction" means the erection, installation, design work, engineering work, permitting through a governmental entity, architectural design, obtaining construction financing, or construction of a dwelling on a fixed foundation on land which is owned or purchased by a home buyer;

(7)    "New home construction contract" means a contractual agreement, written or oral, between a new home contractor and a home buyer whereby the new home contractor agrees to provide new home construction services in exchange for tender of money or other consideration of value by a home buyer or by any lending institution on behalf of the home buyer to a new home contractor as part of a new home construction contract;

- 30 -

\* \* \*

(b)     It is an offense for a new home construction contractor or home improvement services provider with intent to defraud to:

(1)(A) Fail to refund amounts paid under a new home construction contract or a contract for home improvement services within ten (10) days of:

(i)     The acceptance of a written request for a refund either hand delivered or mailed certified mail return receipt attached;

(ii)    The refusal to accept the certified mail sent to the last known address of the new home contractor or home improvement services provider by the home buyer or residential owner; or

(iii)   The return of the certified mail to the home buyer or residential owner indicating that the addressee is unknown at the address or a similar designation if the provider failed to provide to the home buyer, residential owner, or the United States postal service a correct current or forwarding address;

(B)     A violation of subdivision (b)(1)(A) is an offense only if:

(i)     No substantial portion of the new home construction or home improvement services work has been performed at the time of the request;

(ii)    More than ninety (90) days have elapsed since the starting date of the new home construction contract or contract for home improvement services; and

(iii)   A copy of the written request for a refund was sent by the home buyer or residential owner to

the consumer protection division of the office of the attorney general;

(2)     Deviate from or disregard plans or specifications in any material respect that are contained in a new home construction contract or contract for home improvement services; provided, that the home buyer or residential owner did not provide written consent for the new home contractor or home improvement services provider to deviate from or disregard plans or specifications in the contract and such deviation or disregard caused substantial damage to the home buyer or residential owner's property in that the value of the new construction was less than the value had it been built in accordance with the plan and contract. Such deviation includes, but is not limited to:

(A)     The amount billed for the new home construction contract or contract for home improvement services is substantially greater than the amount quoted in the contract; or

(B)     The materials used in the project are of a substandard quality but the home buyer or residential owner was charged for higher quality materials.

(c)(1)  A violation of subsection (b) is punishable as theft pursuant to § 39-14-105. Value for a violation of subsection (b), shall be determined by the monetary amount of the new home construction contract or contract for home improvement services that is paid, minus the value of any work performed, plus the cost to repair any damage to the home buyer or residential owner's property caused by the new home contractor or home improvement services provider.

* * *

(4)     In addition, such a violation shall be construed to constitute an unfair or deceptive act or practice affecting the conduct of trade or commerce under the Tennessee Consumer Protection Act of 1977, compiled in title 47, chapter 18, and as such, the private right of action remedy under that act shall be available to any person who suffers an ascertainable loss of money or property, real, personal, or

mixed, or any other article, commodity, or thing of value wherever situated as a result of such violation.

(Emphasis added.)

Plaintiffs contend that the trial court erred in failing to consider their claim for damages brought pursuant to Tennessee Code Annotated § 39-14-154. However, numerous issues exist with respect to Plaintiffs' reliance upon this statute as a means of recovery. First and foremost, we note that this statute appears in the section of the Code dealing with criminal offenses and that it primarily prescribes a criminal penalty. Second, to the extent that Plaintiffs appear to seek recovery under Tennessee Code Annotated § 39-14-154(b)(1)(A), the statute contains several elements that must be proven in order to establish a violation of its terms, including not only a request for refund, as Plaintiffs contend, but also existence of <u>all</u> <u>three</u> factors presented in subsection (b)(1)(B). As our Supreme Court has explained, "statutory phrases separated by the word 'and' are usually to be interpreted in the conjunctive." *Stewart v. State*, 33 S.W.3d 785, 792 (Tenn. 2000) (citing *Tenn. Manufactured Hous. Ass'n v. Metro. Gov't of Nashville*, 798 S.W.2d 254, 257 (Tenn. Ct. App. 1990) (stating that the word "'and' is a conjunctive article indicating that the portions of the sentence it connects should be construed together")).

Finally, assuming, *arguendo*, that Plaintiffs were able to prove all of the required elements to establish a violation of Tennessee Code Annotated § 39-14-154, the only private right of action provided to a plaintiff alleging a violation would be pursuant to the Tennessee Consumer Protection Act. As the trial court correctly concluded, Plaintiffs' claims based upon the Tennessee Consumer Protection Act were subject to a one-year statute of limitations and were, accordingly, untimely. *See* Tenn. Code Ann. § 47-18-110 (2013). We therefore determine that this issue is without merit.

IX. Applicability of Tennessee Code Annotated § 47-18-1402

Plaintiffs assert that the trial court erred in declining to allow their warranty claim, brought pursuant to Tennessee Code Annotated § 47-18-1402, to proceed. This statutory section is known as the Tennessee Consumer Protection Warranty Extension Act ("TCPWEA"), which specifically provides that it applies to any "written warranty or service contract purchased in this state on or after July 1, 1989, and in effect when there is a failure of the product under such written warranty or service contract[.]" Tenn. Code Ann. § 47-18-1402 (2013). The statute provides that the warranty shall be extended by the "number of days the consumer is deprived of the use of the product by reason of the product being in repair; plus" "[t]wo (2) additional working days." *Id*.

The trial court determined that Plaintiffs could not state a claim pursuant to Tennessee Code Annotated § 47-18-1402 because the statute, by its express terms,

applied to consumer products rather than homes. We agree, relying upon well-settled Supreme Court precedent, which provides as follows:

> When construing a statute, this Court's role is "'to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'" *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002) (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn.1995)). Legislative intent is determined "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000). "When the statutory language is clear and unambiguous, we apply the plain language in its normal and accepted use." *Boarman v. Jaynes*, 109 S.W.3d 286, 291 (Tenn. 2003).

*Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004).

By its clear language, Tennessee Code Annotated § 47-18-1402 applies to a purchased "written warranty or service contract" applicable to a "product." As the trial court noted, the definition of a "product" typically envisions "something that is distributed commercially for use or consumption." *See* BLACK'S LAW DICTIONARY 1328 (9th ed. 2009). Accordingly, a product usually involves an item of tangible personal property rather than real property. *See*, *e.g.*, Tenn. Code Ann. § 29-28-102(5) (2012) (provision in products liability statute defining a product as "any tangible object or goods produced"). Therefore, as the trial court concluded, Plaintiffs have failed to demonstrate that Tennessee Code Annotated § 47-18-1402 has any applicability to their claims in the case at bar.[4]

Plaintiffs rely upon our Supreme Court's opinion in *Dixon v. Mountain City Constr. Co.*, 632 S.W.2d 538, 541 (Tenn. 1982), as support for their postulate that a residential home can be considered a "product." In *Dixon*, the High Court cited an earlier unreported decision of this Court that had purportedly suggested such a conclusion as a means of "circumvent[ing] the doctrine of caveat emptor" as it served to negate an implied warranty concerning the construction of a home. *Id*. at 540. However, our High Court proceeded to state that it "disapprove[d] of the adoption of circumvention theories," choosing instead to adopt an implied warranty of good workmanship in a construction contract that did not explicitly provide such a warranty. *Id*. at 541-542. As such, *Dixon* does not support Plaintiffs' characterization of a home as a "product."

---

[4] We note that in this case, Plaintiffs purchased the home and the parcel of real property upon which it was constructed from Defendants. We have not been asked to consider and therefore make no determination concerning whether a home contracted to be built upon land already owned by a plaintiff might be considered a "product."

X.  Due Process

Plaintiffs assert that the trial court violated their right to due process by dismissing Plaintiffs' claims and allegedly failing to follow the Tennessee Rules of Civil Procedure. By way of example, Plaintiffs argue that the trial court violated procedural rules by dismissing their claims without a trial, allowing Defendants extra time to respond to Plaintiffs' March 15, 2021 amended emergency motion, and failing to conduct an additional hearing thereafter.

As our High Court has elucidated:

> Due process, at its most basic level, "mean[s] fundamental fairness and substantial justice." *Vaughn v. State*, 3 Tenn. Crim. App. 54, 456 S.W.2d 879, 883 (1970). Due process acts as a constraint on "both the procedures used by the government and the substance of legislation interfering with personal liberties." 2 Chester James Antieau & William J. Rich, *Modern Constitutional Law* § 40.00, at 558 (2d ed. 1997) []. As to the first constraint, one of the most basic due process requirements "is a fair trial in a fair tribunal." 6A Tenn. Jur. Constitutional Law § 77.

*State v. White*, 362 S.W.3d 559, 566 (Tenn. 2012). Moreover, "procedural due process ensures that litigants are 'given an opportunity to have their legal claims heard at a meaningful time and in a meaningful manner.'" *In re Walwyn*, 531 S.W.3d 131, 138 (Tenn. 2017) (quoting *Lynch v. City of Jellico*, 205 S.W.3d 384, 391 (Tenn. 2006)).

However, as this Court has also previously explained:

> Procedural due process . . . does not prevent deprivations of "life, liberty, or property" but instead it simply "requires state and local governments to employ fair procedures when they deprive persons of a constitutionally protected interest in 'life liberty, or property.'" *Cheatham County v. Cheatham County Bd. of Zoning Appeals*, No. M2012-00930-COA-R3-CV, 2012 WL 5993757, at *3 (Tenn. Ct. App. Nov. 30, 2012) (quoting *Parks Props. v. Maury County*, 70 S.W.3d 735, 743 (Tenn. Ct. App. 2001)). . . . It is clear, however, "that a state may erect reasonable procedural requirements for triggering the right to an adjudication, such as statutes of limitations, and a state may terminate a claim for failure to comply with a reasonable procedural rule without violating due process rights." *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992).

*Webb v. Roberson*, No. W2012-01230-COA-R9-CV, 2013 WL 1645713, at *20 (Tenn. Ct. App. Apr. 17, 2013). "The purpose of the statute of limitations is to avoid

adjudication of stale claims and to give defendants notice to preserve their evidence." *Gamble v. Hosp. Corp. of Am.*, 676 S.W.2d 340, 343 (Tenn. Ct. App. 1984).

In the case at bar, Plaintiffs' claims were dismissed due to expiration of the applicable statute of limitations. The trial court's dismissal of Plaintiffs' claims on such basis was not violative of Plaintiffs' due process rights. *See Webb v. Roberson*, 2013 WL 1645713, at *20. Plaintiffs further contend, however, that the trial court violated their due process rights by failing to comply with various procedural rules related to other actions taken by the court.

Plaintiffs insist that the trial court violated the Tennessee Rules of Civil Procedure by failing to conduct a "new hearing" following the trial court's April 6, 2021 order wherein the court acknowledged Plaintiffs' argument that the court failed to consider matters stated in Plaintiffs' amended response to the motion to dismiss, which the court had not seen at the time of its ruling. In its April 6, 2021 order, the court therefore directed Defendants to file a response within ten days, at which time the court would either rule based on the pleadings or set the matter for further hearing. Although the trial court eventually made a determination concerning Plaintiffs' motions based on the written submissions only, such action does not constitute a violation of due process. *See Jerkins v. McKinney*, 533 S.W.2d 275, 279 (Tenn. 1976) (explaining that "[o]ral argument is especially unnecessary when only questions of law are concerned" in a motion and that "due process is not offended by denial of the opportunity for the presentation of argument" in such cases).

Plaintiffs similarly argue that the trial court violated the Tennessee Rules of Civil Procedure by allowing Defendants to file a response to Plaintiffs' amended response to the motion to dismiss when Defendants had purportedly failed to do so "within the fifteen (15) day requirement by the Rules of Civil Procedure and subsequently [Defendants] fell under the Rule of Civil Procedure 12.08 waiving all rights to a Defense for [Defendants'] failure to respond to either the March 9 or the March 15, 2021 Motions and Memorandums of Law[.]" We note, however, that Tennessee Rule of Civil Procedure 12.08 involves the waiver of a legal defense to a claim for failure to present that defense by motion or answer following filing of the complaint. In their response, Defendants were not stating additional legal defenses to claims; rather, they were replying to arguments contained in Plaintiffs' amended response to the motion to dismiss. Moreover, Defendants were not required to file a reply to Plaintiffs' amended response by the Tennessee Rules of Civil Procedure. The fact that the trial court afforded Defendants an opportunity to respond to an amended response to the Defendants' motion is not violative of any procedural rules or Plaintiffs' due process rights.

The trial court fully considered and ruled upon Plaintiffs' arguments contained in their amended response to the motion to dismiss, as demonstrated by the court's May 7, 2021 order. As such, Plaintiffs were afforded fundamental fairness and the opportunity

to have their arguments considered. Plaintiffs have demonstrated no deprivation of their due process rights.

## XI. Alleged Trial Court Prejudice

Plaintiffs assert that the trial court exhibited prejudice against Plaintiffs and in favor of Defendants by providing "latitude for" Defendants and demonstrating "harsh treatment" toward Plaintiffs. Plaintiffs contend that the trial court acted in a manner that was violative of Plaintiffs' constitutional rights during the entire proceedings.

Our review of the trial court's rulings in this matter reveals no showing of prejudice for or against either party by the trial court. Moreover, we note that although Plaintiffs posit in the argument section of their principal brief that the trial court judge should have recused himself, the record does not demonstrate that Plaintiffs ever filed in the trial court a motion to recuse the trial court judge pursuant to Tennessee Supreme Court Rule 10B. Plaintiffs also did not present a specific issue on appeal regarding recusal of the trial court judge. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."). We therefore determine that Plaintiffs have effectively waived any issue concerning recusal of the trial court judge at this juncture. *See, e.g., Xcaliber Int'l Ltd., LLC v. Tenn. Dep't of Revenue*, No. M2017-01918-COA-R3-CV, 2018 WL 4293364, at *17-18 (Tenn. Ct. App. Sept. 10, 2018) (concluding that the plaintiff had waived a request for reassignment to a different trial court judge on remand when the plaintiff had not filed a motion for recusal and had failed to raise the issue in its statement of the issues on appeal).

## XII. Temporary Restraining Order

Plaintiffs posit that the trial court erred by failing to enter a temporary restraining order to prevent Plaintiffs' home from going into foreclosure in order to "preserve Plaintiffs' evidence." However, Plaintiffs have failed to demonstrate that they properly applied for the trial court to issue such an order. Tennessee Rule of Civil Procedure 65 sets forth certain requirements for obtaining a temporary restraining order, including the filing of "an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party can be heard in opposition; and" "the applicant's attorney (or pro se applicant) certifies in writing efforts made to give notice and the reasons why it should not be required." Tenn. R. Civ. P. 65.03. Moreover, Tennessee Rule of Civil Procedure 65.02 states that a restraining order is "binding upon the parties to the action, their officers, agents and attorneys; and upon persons in active concert or participation with them who receive actual notice of the restraining order or injunction by personal service or otherwise." Plaintiffs' mortgage holder is not a party to this action and has not been shown to have been in active concert with Defendants.

- 37 -

In addition, Tennessee Code Annotated § 29-23-201 provides in pertinent part:

> (a) No judge or chancellor shall grant an injunction to stay the sale of real estate conveyed by deed of trust or mortgage, with a power of sale, executed to secure the payment of a loan of money, unless the complainant gives five (5) days' notice to the trustee or mortgagee of the time when, place where, and of the judge or chancellor before whom, the application for injunction is to be made.

The record does not demonstrate Plaintiffs' compliance with the requirements of Tennessee Rule of Civil Procedure 65.03 or Tennessee Code Annotated § 29-23-201. As such, this issue is without merit.

## XIII. Purported Violation of Rules of Professional Conduct

Plaintiffs contend that the trial court erred by failing to conclude that Defendants' counsel was in violation of Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.6, for allegedly neglecting to uphold his duty to ensure that his clients did not cause financial or physical harm to Plaintiffs. We note, however, that Defendants' counsel is not a named defendant in this action and that Plaintiffs have asserted no claims against him individually. For this reason, Plaintiffs' contention is without merit.

## XIV. Remaining Issues

Finally, Plaintiffs raise issues concerning whether the trial court erred by allegedly "changing" a date of service or by failing to utilize the procedure related to a motion for summary judgment rather than a motion to dismiss. However, Plaintiffs neglected to offer support for these issues in the argument section of their brief, failing to state "the contentions of the appellant[s] with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on[.]" Tenn. R. App. P. 27(a)(7)(A). *See Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) ("The failure of a party to cite to any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue."); *Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) ("[W]hen a party raises an issue in its brief, but fails to address it in the argument section of the brief, we consider the issue to be waived."). Accordingly, these issues are deemed waived.

## XV. Conclusion

For the foregoing reasons, we determine that although the trial court properly applied the three-year statute of limitations to Plaintiffs' claims of injury to their real property, the trial court improperly determined that the doctrine of fraudulent

concealment would not apply to toll the accrual of such limitations period concerning Plaintiffs' claims for damages caused by Defendants' failure to seal the utility penetrations beneath the home, a fact which allegedly was concealed by Defendants. We also determine that Plaintiffs stated claims of breach of contract, including breach of any express or implied warranties provided by the contract, and that the trial court improperly dismissed these claims based on the incorrect statute of limitations. We therefore vacate the trial court's dismissal of the breach of contract and contractual warranty claims, as well as the claims based on Defendants' failure to seal the utility penetrations, and we remand those claims to the trial court for further proceedings consistent with this opinion. We affirm the remaining portion of the trial court's judgment in its entirety. Costs on appeal are assessed to the appellees, John Maher Builders, Inc.; John Maher; and Tony Maher.


s/ Thomas R. Frierson, II
_____
THOMAS R. FRIERSON, II, JUDGE